**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | **Case No. 23-CR-448 (JEB)** |
| : | |
| **WILLARD PURKEL, JR.** : | |
| : | |
| **Defendant.** : | |

## JOINT STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Willard Purkel, Jr. (the "defendant"), with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.    Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.    On January 6, 2021, the defendant trespassed over the restricted perimeter around the Capitol Grounds and walked north to the east side of the Capitol building. There, the defendant was part of the crowd that forced their entry through the East Rotunda Doors into the Capitol. At that time, the defendant knew that Vice President Pence was at the Capitol to certify the results of the 2020 presidential election.

9.    At approximately 3:07 p.m., a group of rioters tried to enter through the East Rotunda Doors while another group of rioters tried to exit. Police officers, meanwhile, tried to shut the doors to stop the influx of rioters. The defendant, attempting to get in, was part of a group that

pushed against the officers, temporarily blocking the police from closing the doors. The defendant made contact with at least one officer, touching the officer as the defendant tried to push through, before the defendant himself was pushed back by another officer.

10. Around 3:21 p.m., with the doors opened again to get rioters out of the building, the defendant lent his strength to a crowd that collectively managed to push its way in, streaming into the lobby outside the Rotunda. He joined in a crowd that pushed against police who were trying to prevent the rioters from entering the Rotunda itself. Shortly before the police could close the door around 3:25 p.m., the defendant entered the Rotunda.

11. Once inside, the rioters were surrounded by a group of officers who were able to control the situation. After a few minutes, the defendant, along with other protesters, left the Rotunda when instructed to do so by police.

### *Statutory Maximums for the Offenses*

12. The defendant faces up to the following for the below referenced offenses (in addition to any special assessment and restitution):

   a. Count 1: 18 U.S.C. § 231(a)(3): five years imprisonment, three years of supervised release, $250,000 fine.

   b. Count 2: 18 U.S.C. § 1752(a)(1): one year imprisonment, one year of supervised release, $100,000 fine.

   c. Count 3: 18 U.S.C. § 1752(a)(2): one year imprisonment, one year of supervised release, $100,000 fine.

   d. Count 4: 40 U.S.C. § 5104(e)(2)(D): six months imprisonment, $5,000 fine.

   e. Count 5: 40 U.S.C. § 5104(e)(2)(G): six months imprisonment, $5,000 fine.

### *Elements of the Offense*

13. The defendant knowingly and voluntarily admits to all of the elements of each offense to which he is pleading.

14. The parties agree that 18 U.S.C. § 231(a)(3) requires the following elements:

   a. First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with a law enforcement officer.

   b. Second, at the time of the defendant's act, the law enforcement officer was engaged in the lawful performance of his or her official duties incident to and during a civil disorder.

   c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

15. The defendant admits that he knowingly committed an act with the intended purpose of obstructing, impeding, and interfering with one or more law enforcement officers; he did so while that officer or employee was engaged in, and on account of, the performance of official duties incident to and during a civil disorder; and that the civil disorder obstructed, delayed, and adversely affected commerce and the performance of a federally protected function.

16. The parties agree that 18 U.S.C. § 1752(a)(1) requires the following elements:

   a. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

   b. Second, the defendant did so knowingly.

17. The defendant admits that he knowingly entered and remained in a restricted building and restricted grounds without lawful authority.

18. The parties agree that 18 U.S.C. § 1752(a)(2) requires the following elements:

    a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

    b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

    c. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

19. The defendant admits that he knowingly and intentionally engaged in disorderly and disruptive conduct in, and in proximity to, the restricted building and grounds; and that his conduct in fact impeded and disrupted the orderly conduct of Government business and official functions.

20. The parties agree that 40 U.S.C. § 5104(e)(2)(D) requires the following elements:

    a. First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

    b. Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either house of Congress.

    c. Third, the defendant acted willfully and knowingly.

21. The defendant admits that he willfully and knowingly engaged in disorderly and disruptive conduct in the United States Capitol Building; and that he did so with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress.

22. The parties agree that 40 U.S.C. § 5104(e)(2)(G) requires the following elements:

    a. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

    b. Second, the defendant acted willfully and knowingly.

23. The defendant admits that he willfully and knowingly paraded and demonstrated in the Capitol Building.

                                        Respectfully submitted,

DATED: May 22, 2024                       MATTHEW M. GRAVES
                                        United States Attorney
                                        D.C. Bar No. 481052

                           By:    /s/ Brendan Ballou
                                        Brendan Ballou
                                        DC Bar No. 241592
                                        Special Counsel
                                        United States Attorney's Office
                                        601 D Street NW
                                        Washington, DC 20001
                                        (202) 431-8493
                                        brendan.ballou-kelley@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Willard Purkel, Jr., have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5-30-24

Willard Purkel, Jr.
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5-30-24

David Courcelle
Attorney for Defendant